**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CLASS ACTION**

**Case No. 2:25-CV-14434**

**JURY TRIAL DEMANDED**

NORMAN KNOCHE, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

ALEXANDER & ASSOCIATES REAL ESTATE SOLUTIONS LLC.,

*Defendant*.
_______________________________________/

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff, Norman Knoche ("Plaintiff"), brings this action against Defendant, Alexander & Associates Real Estate Solutions LLC. ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

**NATURE OF THE ACTION**

2. This is a class action under the 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA").

3. Defendant is a real estate company that provides real estate acquisition services and property solutions to consumers, based out of Florida.

4. To promote its goods and services, Defendant engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the TCPA, even after customers opt out from Defendant's messages and during the prohibited after-hours period proscribed by the TCPA.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the classes, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services from within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred from within the Southern District of Florida and, on information and belief, Defendant has sent the same text messages complained by Plaintiff to other individuals from within this judicial district, such that some of Defendant's acts in making such text messages have occurred from within this district, subjecting Defendant to jurisdiction in the Southern District of Florida.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Lee County, Florida.

9. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 1589 (the "1589 Number") that received Defendant's text message solicitations.

10. Defendant is a Florida company whose principal place of business is located at 11582 SW Village Pkwy 1061, Port Saint Lucie, FL 34987.

11. Defendant directs, markets, and provides its business activities throughout United States and the State of Florida.

12. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

13. Defendant is a real estate company who uses fictitious names of individuals to solicit new business via telephone solicitation.

14. For example, as demonstrated by the text messages below, Defendant posed as an individual named "George Reyes" in an attempt to solicit Plaintiff's business.

15. On information and belief, Defendant has never employed an individual named George Reyes to work for Defendant or transmit telephone solicitations on Defendant's behalf.

16. Rather, Defendant is owned by a sole individual named Miguel Arismendy, who holds himself out as the chief executive officer at "Alexander & Associates Real Estate Solutions, LLC."[1]

---

[1] See https://www.linkedin.com/in/alexlandacquistions/ (last accessed February 3, 2026).

17. On information and belief Mr. Arismendy is the only individual employed by Defendant.

18. Beginning at least in October 2025, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 1589 Number from Defendant's telephone number (772)-404-3997, including but not limited to a message sent on October 25, 2025 at 11:43 PM, as shown below:



19. In response to this late-night bombardment, Plaintiff was forced to respond on October 25, 2025, with the message "No" and “Pass” to Defendant's (772)-404-3997 telephone number, using clear and unambiguous opt-out language to opt out of any further text message communications with Defendant (as shown above).

20. Despite Plaintiff˝s unequivocal opt-out request, Defendant continued sending unwanted messages to Plaintiff˝s 1589 Number. Specifically, on October 27, 2025 at 9:11 PM, Defendant sent an additional text message from telephone number (772) 404-3997, once again violating federal after-hours restrictions while demonstrating a willful and knowing disregard for Plaintiff's clearly expressed wishes, as shown below:



21. This pattern of after-hour violations and continued contact following Plaintiff's opt-out request demonstrates Defendant's willful and knowing disregard for consumer protection laws and its deliberate choice to ignore both federal time restrictions and consumer opt-out demands.

22. Defendant has the capability of immediately complying with Plaintiff’s opt-out requests.

23. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitation. Indeed, Plaintiff attempted to opt-out of Defendant’s telephone solicitations by telling Defendant “No” and “Pass”, but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff’s instructions in order to solicit the sale of its services to Plaintiff.

24. Defendant’s refusal to honor Plaintiff’s opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

25. Defendant’s refusal to honor Plaintiff’s opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list. In fact, Plaintiff, through counsel, made a request to Defendant for a copy of Defendant’s do-not-call list policy, but received no response from Defendant.

26. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff’s explicit opt-out instructions.

27. Defendant’s refusal to honor Plaintiff’s opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

28. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

29. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text.

30. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

31. Indeed, Plaintiff's and the class members opt-out requests were not honored within a reasonable time from when the opt-out request was made.

32. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

33. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., real estate services.

34. The information contained in the text messages advertises Defendant's discounts and promotions, which Defendant sends to promote its business.

35. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

36. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

37. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

38. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

39. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted after opting out.

40. In fact, through the investigation of Plaintiff's counsel, Plaintiff discovered that Defendant admitted it never lawfully obtained Plaintiff's prior express consent to send Plaintiff telephone solicitation.

41. Plaintiff's counsel's investigation further revealed that Defendant's telephone solicitations were a result of Defendant' own negligence and "mistakes" within Defendant's internal CRM system.

42. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages after opting out.

43. Plaintiff has no existing business relationship with Defendant

44. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on at least October 25, 2025, when Plaintiff responded to Defendant with "No" and Pass".

45. Plaintiff is the subscriber and sole user of the 1589 Number and is financially responsible for it.

46. Plaintiff's 1589 Number is his residential number which he uses for personal purposes.

47. Plaintiff registered his 1589 Number with the national do-not-call registry on July 22, 2006 and has been registered at all times relevant to this action.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. The text messages originated from the telephone (772) 404-3997, which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

50. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members inbound opt-out requests.

51. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

52. Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

53. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations

of the TCPA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations. Additionally, the deliberate nature of Defendant's violations, continuing to send messages after his express opt-out request, caused Plaintiff significant additional time loss and frustration.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

54. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

55. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**
>
> **National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one text message by or on behalf of Defendant within any 12-month period; (2) regarding Defendant's goods or services, to said person's cellular telephone number; and (3) while Defendant did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls.**
>
> **After-Hours Violation Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf between the hours of 9:00 PM and 8:00**

**AM in the recipient's local time zone, in violation of 47 C.F.R. § 64.1200(c)(1).**

56. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Class members number in the several thousands, if not more.

57. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**NUMEROSITY**

58. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

59. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

**COMMON QUESTIONS OF LAW AND FACT**

60. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

[1] Whether Defendant initiated telephone solicitations to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[3] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[4] Whether Defendant violated 47 C.F.R. § 64.1200(c)(1) by sending text messages during prohibited after-hours times;

[5] Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

[6] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[7] Whether Defendant has any written policies for maintaining an internal do not call list

[8] Whether Defendant's conduct was knowing and willful; and

[9] Whether Defendant is liable for damages, and the amount of such damages.

61. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephone solicitations and telemarketing messages to consumers after they had requested to be opted out, while they were registered on the DNC Registry and at times prohibited by law, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

62. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

63. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

64. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is

economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

65. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## COUNT I
## Violation of the TCPA, 47 U.S.C. § 227
## (On Behalf of Plaintiff and the Do Not Call Registry Class)

66. Plaintiff repeats and realleges the paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

69. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

70. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

71. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c)(2)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

74. Plaintiff re-alleges and incorporates paragraphs 1 through 65 as if fully set forth herein.

75. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

77. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

78. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive telemarketing messages from Defendant.

79. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

80. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

81. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

82. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

83. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

84. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

85. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**Violation of the 47 U.S.C. § 64.1200(c)(1)**
**(On Behalf of Plaintiff and the After-Hours Violation Class)**

86. Plaintiffs re-allege and incorporates paragraphs 1 through 65 as if fully set forth herein.

87. 47 C.F.R. § 64.1200(c)(1) provides that "[n]o person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

88. 47 C.F.R. § 64.1200(e) provides the rules set forth in 47 C.F.R. § 64.1200(c) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

89. Any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to

protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

90. Defendant violated 47 C.F.R. § 64.1200(c)(1) by initiating, or causing to be initiated, telephone solicitations to Plaintiff and the After-Hours Violation Class members during prohibited after-hours times, in the recipients' local time zones.

91. Defendant violated 47 U.S.C. § 227(c) because Plaintiff and the After-Hours Violation Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c)(1), as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the After-Hours Violation Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200(c)(1).

92. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the After-Hours Violation Class.

**COUNT IV**
**Knowing and/or Willful Violations of the TCPA**
**(On Behalf of Plaintiff and the Classes)**

93. Plaintiff re-alleges and incorporates paragraphs 1-58 as if fully set forth herein.

94. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

95. Defendant knew that it did not have prior express consent to transmit telemarketing text messages and knew or should have known that its conduct was a violation of the TCPA.

96. Defendant knew or should have known that Plaintiff's number was on the National Do Not Call Registry since July 22, 2006, and that sending text messages to such numbers violated federal regulations.

97. Defendant knew or should have known that continuing to send telemarketing text messages after receiving Plaintiff's explicit demand to "No" and "Pass" violated 47 C.F.R. § 64.1200(d) and related TCPA provisions requiring entities to maintain internal do-not-call procedures.

98. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its telemarketing text messages and that their numbers were on the National Do Not Call Registry, and that Plaintiff's explicit opt-out demand was being ignored, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Classes pursuant to § 227(c)(5) of the TCPA.

99. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Classes Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: February 3, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Andrew Shamis*
Andrew J. Shamis, Esq.
Florida Bar #101754
ashamis@shamisgentile.com
Christopher E. Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
*/s/ Scott Edelsberg_*
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Classes.*